**In the Matter of SUNNYBROOK ADULT MOBILE HOME PARK, INC., Debtor.**

**Bankruptcy No. 85–1077.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Aug. 27, 1986.

John Yanchunis, St. Petersburg, Fla., for Florida Federal Sav. & Loan.

Larry Foyle, Tampa, Fla., for debtor.

Allan Watkins, Tampa, Fla., for trustee, E Mayo Clark.

## ORDER ON OBJECTION TO CLAIM

ALEXANDER L. PASKAY, Chief Judge.

THE MATTER under consideration in this Chapter 11 case is an Objection by the Debtor, Sunnybrook Adult Mobile Home Park, Inc. (Debtor) to the Claim of Florida Federal Savings and Loan Association (Florida Federal). The Debtor contests Florida Federal's claim, asserting that the Debtor is entitled to a setoff for damages it suffered when Florida Federal allegedly refused to deal in good faith with the Debtor in its efforts to convert its mobile home park from a rental park to a cooperative. The facts relevant to the issues presented herein as gleaned from the record and the evidence presented at the hearing are as follows:

In early 1984, the Debtor obtained a loan in the amount of $690,600 from Florida Federal for the purpose of satisfying existing liens and encumbrances and completing construction on its mobile home park located in Hernando County, Florida. The loan agreement provided that the mobile home park was to be operated as a rental park open to the general public, and the loan from Florida Federal was to be repaid from income produced by the operation of the park. Any changes in this rental park concept were subject to the approval of Florida Federal. On March 30, 1984, Dr. Gail Shields, Vice-President of the Debtor, executed on behalf of the Debtor a construction loan agreement, note, security agreement granting to Florida Federal a security interest in certain personal property owned by the Debtor, and a financing statement. Dr. Shields also executed a mortgage granting to Florida Federal a lien on the Debtor's mobile home park.

Pursuant to the terms of the note and mortgage, the term of the note was comprised of two distinct loan periods consisting of an 18 month construction loan period and a 60 month permanent loan period. At the expiration of the 18 month construction loan period, the Debtor was to tender to Florida Federal an amount sufficient to reduce the outstanding principal balance of the loan to $300,000 and to pay all accrued and outstanding interest. The remainder of the obligation was to be paid during the permanent loan period.

In early November, 1984, Dr. Shields and Mr. Charles Shields, President of the Debtor, met with Mr. Donald Truppi, an underwriter for income properties at Florida Federal, to discuss with him the possibility of converting the use of the Debtor's mobile home park from a rental park to a cooperative park. The Debtor contends that at this meeting Mr. Truppi approved the conversion of the park from a rental park to a cooperative, and indicated that formal approval would be virtually automatic once the paperwork was completed; however, Florida Federal asserts that Mr. Truppi, who had no independent loan approval authority and did not have authority to authorize the conversion, only expressed an interest in the cooperative and requested that the Debtor prepare the written documentation necessary for the conversion in order to submit it to the loan committee at Florida Federal for approval. In any event, it is clear that nothing specific regarding the cooperative concept was discussed at that meeting and there was no discussion of changes to the note and mortgage or of release prices for individual lots which would be necessary to market the park as a cooperative.

After this November meeting, the Debtor contacted its attorney to begin preparation of the documents necessary to convert the park to a cooperative, including documents required by the Division of Land Sales and Condominiums of the State of Florida. In January, 1985, after the Debtor delivered drafts of the required documents to Florida Federal, the Debtor embarked on a marketing program to sell shares in the cooperative and expended

over $20,000 in advertising. During this time the Debtor also entered into several reservation agreements with prospective buyers which required the Debtor to close sales under the cooperative plan within 45 days after the reservation was taken.

Testimony by Dr. Gail Shields indicated that the Debtor believed that Florida Federal would give formal approval to the conversion within time to meet the 45 day closing deadline in the reservation agreements. Unfortunately for the Debtor, there were several deficiencies and omissions in the documents submitted to Florida Federal, and in March, 1985, Mr. Truppi contacted counsel for the Debtor and informed him of changes that would have to be made before the documents could be submitted to the loan committee for approval. By this time, however, the Debtor, which had begun to experience financial difficulties, had failed to make its February 1st and March 1st interest payments due under the note and mortgage. When the Shields met with officers from Florida Federal in April, they were told that in addition to correcting the problems with the documents, the Debtor would also have to cure the arrearages under the note and mortgage before the documents could be submitted for approval. Unable to cure these defaults and suffering other financial pressures as well, the Debtor filed its Voluntary Petition for Relief under Chapter 11 in this Court on May 1, 1985.

The Debtor bases its Objection to the Claim of Florida Federal on the alleged failure of Florida Federal to deal in good faith with the Debtor in its efforts to convert its rental park to a cooperative park. The Debtor asserts that in its November meeting with Mr. Truppi at Florida Federal, Mr. Truppi committed Florida Federal to a prompt approval of the changes the Debtor desired to make and that the Debtor reasonably relied on this representation when it expended funds for preparations of the documents and for marketing. Additionally, the Debtor contends that the delay in obtaining the approval precluded its closing numerous sales within the 45 days set in the reservation agreement and resulted in lost sales and lost rent it would have collected if the Debtor had not relied on Mr. Truppi's representation and had continued to operate its park as a rental park.

■ A properly filed Proof of Claim is presumed to be valid, and the Debtor has the burden of going forward with evidence and rebuttal. *See, i.e.* 11 U.S.C. § 502(a); *Munzenreider Corporation,* 58 B.R. 228 (Bankr.M.D.Fla.1986); *In re Global Western Development Corp.,* 759 F.2d 724 (9th Cir.1985). It is without dispute that Florida Federal's Proof of Claim was properly filed pursuant to § 501 of the Bankruptcy Code, and therefore the burden is on the Debtor to overcome the presumption that the claim is valid.

■ This Court has reviewed the testimony and the evidence presented at trial and finds that the Debtor has failed to present credible evidence which would defeat Florida Federal's claim and entitle the Debtor to a setoff. Even assuming that Mr. Truppi had the authority to enter into a binding agreement concerning the modification of the original note and mortgage, an assumption that is not established by this record, Mr. Truppi did not commit Florida Federal to approval of the Debtor's cooperative concept in the November, 1984 meeting. Any reliance by the Debtor on the alleged promise was not justified and reasonable, especially in light of the fact that the November meeting was nothing but a general conversation without any discussion of any specific terms of the modification. The most that could be said about that meeting was that Mr. Truppi expressed an interest in the concept and encouraged the Debtor to explore the possibility of converting the project from a rental property to a cooperative. Florida Federal had no duty to assist the Debtor in the conversion and any damages the Debtor suffered were not caused by anything that Florida Federal did or did not do. The Debtor's claim of setoff is without basis and cannot be recognized.

Based on the foregoing, this Court is satisfied that the Debtor has failed to over-

come the presumption under § 502(a) of the Bankruptcy Code that Florida Federal's properly filed Proof of Claim is valid, and accordingly, Florida Federal's claim must be allowed as filed.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that the Objection to Claim of Florida Federal Savings and Loan Association is overruled, and the claim is allowed as filed.